FILED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA    99 APR 28 AM 10: 39

SOUTHERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

FRANCES H. BROOKS,                )
                                  )
        Plaintiff,                )
                                  )
v.                                )        CV-98-BU-260-S
                                  )
NORFOLK SOUTHERN RAILWAY          )
COMPANY,                          )        ENTERED
                                  )
        Defendant.                )        APR 28 1999.

Memorandum Opinion

Frances H. Brooks ("Plaintiff") filed this case alleging that her employer, Norfolk Southern Railway Company ("Defendant"), violated her rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et. seq., by failing to promote her. The case is now before the Court on Defendant's motion for summary judgment. (Doc. 14). The issues in dispute are whether there is sufficient evidence to allow a jury reasonably to conclude that Plaintiff was qualified for the position she sought and, if so, whether there is also sufficient evidence to indicate that Defendant's stated reasons for denying Plaintiff the promotion, in short that she was less qualified than the successful applicant, were merely a pretext for unlawful age discrimination. The motion is now ripe for decision, and, upon due consideration, the Court concludes that there are genuine issues of material fact and that Defendant's motion is due to be DENIED.

27

FACTS & BACKGROUND[1]   Plaintiff was born on July 10, 1944, and graduated from Woodlawn High School in Birmingham in 1962. In 1964, she graduated from a one-year secretarial program at Massey Business College. After working as a legal secretary for a law firm from 1966 to 1975, Plaintiff was hired by Defendant as a stenographer-clerk ("steno-clerk") on January 2, 1976. Since that time, Plaintiff has been employed by Defendant as a steno-clerk, and, although she has served in a number of different departments, her duties have remained substantially the same. As its designation would indicate, the duties of the steno-clerk position are clerical in nature; these duties include preparing and processing invoices, bills, and assorted paperwork; taking dictation and shorthand; typing investigations, correspondence, hearings, and bulletins; maintaining employee record files; and assisting in other general office duties, such as answering phones, photocopying, and handling office mail. She was also familiar with various computer programs for use in office work. While employed by Defendant, Plaintiff has never received any sort of oral or written reprimand from her employer due to her job performance, nor has she ever been disciplined due to poor job performance.

All of the steno-clerk positions with Defendant were "union jobs" governed by a collective bargaining agreement ("CBA") between Defendant and the union. Under the CBA, when there is a vacant union job, it is automatically awarded to the employee with the most seniority who bids upon it. The CBA also provides for job displacement or "rolling," which allows an employee who loses his or her position for some reason to take another position held by an employee with less seniority. This system facilitated the Plaintiff's serving in a number of different departments with Defendant. After spending her first five years of employment in Defendant's Transportation Department, Plaintiff bid on and was awarded a steno-clerk position in the Superintendent of Terminals' office in about 1980. Following two tours in the Mechanical Department separated by one in the Material Management

---

[1]"The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

Department, Plaintiff returned to the Transportation Deptartment, in the Office of the Alabama Division Superintendent in August 1995. In April 1997, Plaintiff bid back into the Mechanical Department, where Plaintiff had spent the majority of her career with Defendant.

In or about August 1997, while she was serving in the Mechanical Department, Plaintiff learned that there would be a vacancy in the Division Superintendent's Office for the position of Secretary to the Division Superintendent ("the Secretary position") because the incumbent Secretary, Diane Johnson, was going to be promoted. Defendant did not, however, post the job opening. The Division Superintendent ("Superintendent") at this time was Jeffrey Yates, whom Plaintiff had worked under in 1996 and 1997 for about the last year of her tenure in the Transportation Department. Plaintiff, who was then fifty-three years old, notified Yates that she was interested in being promoted to the Secretary position.

Unlike the steno-clerk union jobs that Plaintiff had held with the railroad, the Secretary position was not subject to being bestowed automatically upon the applicant with the most seniority. Rather, because the Secretary position was not subject to the CBA and was therefore in "management," it would be awarded at the discretion of the Superintendent, Yates. However, handwritten notations on an internal memorandum issued after the Secretary position became available referred to the position as a "clerical vacancy," and a formal list of responsibilities for the Secretary position stated that its duties were "primarily of a secretarial nature," according to a written list of job responsibilities written by Defendant. That list further set out a more detailed list of duties as follows:

  1. Handle calls for the Division Superintendent
  2. Type correspondence for the Division Superintendent and Trainmasters
  3. Maintain all personnel files and seniority rosters for the Division's contract employees
  4. Prepare special reports for the Division Superintendent
  5. Handle discipline reports, personal injury and accident reports
  6. Type summons letters and letters of discipline and declination of discipline appeals
  7. Coordinate division training
  8. Prepare inspection trip information
  9. Handle physicals, hearing protection requirements, drug screening notifications
  10. Arrange for travel reservations of Division officers

      11. Notify [train and engine] Payroll Accounting of [train and engine] active status

      12. Payroll for office clerks.

The evidence further indicates that, in addition to the above tasks, the Secretary position involved serving on the Division Safety Committee and had some supervisory responsibility over clerical workers in the office, although primarily only when one of her superiors, the Assistant Superintendent-Administration, was absent from the office.

During the period Plaintiff had worked in the Superintendent's Office from 1995 to 1997, when Diane Johnson went on vacation or was otherwise absent, Plaintiff had performed many of the duties of the Secretary position, such as entering employee personal injury information on the computer database, typing letters and investigation notices, preparing and maintaining disciplinary records, and answering the Secretary's phone calls. Indeed, while she did not ever completely take over the Secretary's duties when Johnson was absent, Plaintiff had, at one time or another, performed each of the clerical duties of the Secretary position.

Yates granted Plaintiff an interview. However, it lasted only about five minutes, with Yates telling Plaintiff that the Secretary position would be "totally different" from that which she had known, although he did not clarify further what changes he envisioned other than to say that what he wanted was "someone to take care of him." In addition to Plaintiff, Yates also interviewed three other employees of Defendant: Brenda Aldridge, Doris Ann Buzbee, and Shearrod McMillian. According to Aldridge and Buzbee, who were both steno-clerks over age 40, their interviews with Yates were similar in character to the one he conducted with the Plaintiff.

Ultimately, Yates went outside the company and hired Jennifer Lawley to fill the Secretary position on October 1, 1997. Lawley, who was then twenty-six years old, had no railroad or secretarial work experience, although she could type approximately 70 words per minute and had some experience on a number of computer programs employed in an office setting. In addition, her mother held the Secretary position with Defendant from about 1977 to 1993. Lawley had graduated from college, earning a Bachelor of Science degree in Hospitality Management from the University of Alabama. Upon graduation, she worked at the Sheraton Civic Center Hotel in Birmingham as a

"Guest Reception Manager/Trainer." While there she completed a one-year manager training program, and she was responsible for the staffing of 30 employees and developing and implementing office training sessions. In December 1994, Lawley was hired as a Conference Supervisor for Daka Restaurants, which provided the dining services for the BellSouth Alabama Operations Center. In that position, Lawley coordinated such services for meetings, trained new associates, conducted periodic skill evaluations, and assisted the manager with inventory and accounts receivable. In May 1996, Lawley was promoted to General Manager of Daka Restaurants, becoming responsible for all dining and vending machine services within the BellSouth Headquarters building, and she was charged with completing all corporate reports on weekly sales, accounts payable/receivable, staff scheduling, inventory, purchasing/receiving, etc.

In the fall of 1997, Plaintiff returned once again to the Transportation Department, where she continued to work in a steno-clerk capacity. Once there, Plaintiff was subordinate to Lawley in the office hierarchy, but Plaintiff actually helped train her on railroad clerical procedures and paperwork. Indeed, in addition to answering Lawley's questions "every day" on what files were available, Plaintiff had to do some of Lawley's work for her, such as typing various documents, and Plaintiff also had to teach Lawley how to use a dictaphone. Although during the hiring process Yates had alluded to the addition of new duties to the Secretary position, they only one that materialized was that the Secretary accompanied the Superintendent on out of town trips on behalf of the company. Otherwise, the duties of the Secretary position remained substantially as they had been prior to Lawley's hiring. Yates, however, vacated his position as Superintendent about one month after he hired Lawley, and he was replaced by Paul Gibson.

After being passed over for the Secretary position, Plaintiff filed a charge with the Equal Opportunity Employment Commission ("EEOC") on October 10, 1997, alleging that Defendant had discriminated against her on the basis of age. After the EEOC indicated that it had conducted an investigation and would not be taking further action on her charge, Plaintiff filed this action on February 4, 1998, alleging claims under the ADEA and Title VII. The Court granted Defendant's motion to dismiss the Title VII claim, leaving only Plaintiff's ADEA failure to promote claim.

Defendant filed its motion for summary judgment on the ADEA claim on February 8, 1999.

SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The movant's burden is not meager; it must illuminate for the court the reasons why the non-movant cannot or does not raise a genuine issue of material fact sufficient to support a trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. Celotex, 477 U.S. at 324; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). "Tenuous insinuation" and empty speculation based on loose construal of the evidence will not satisfy the non-movant's burden. Cf. Mesnick v. General Elec. Co., 950 F.2d 816, 820 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992).

While the court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, FED. R. CIV. P. 56(c), the Rule "saddles the non-movant with the duty

Page 6 of 23

to 'designate' the specific facts in the record" supporting its claims.  Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996).  "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition."  Id. See also Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.) (en banc) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), cert. denied, 516 U.S. 817 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden.  Anderson, 477 U.S. at 254-55.  The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).  "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried.  The Court must avoid weighing conflicting evidence or making credibility determinations."  Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993).  At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'"  Tidwell v. Carter Products, 135 F.3d 1422, 1425 (11th Cir. 1998) (citing Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir.1989)).

### CONTENTIONS & ANALYSIS

It is undisputed that Plaintiff does not allege the existence of any direct evidence of age discrimination.  Thus, the Plaintiff must prove her case through circumstantial evidence, under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 656 (11th Cir. 1998).  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802; Eskra v. Provident Life and Acc. Ins. Co., 125 F.3d 1406, 1411 (11th Cir.1997).  If she meets that burden, then a presumption arises that the challenged action by the employer was motivated by a discriminatory intent.  Texas Dep't of Community Affairs v. Burdine,

450 U.S. 248, 254 (1981); Jones v. Gerwens, 874 F.2d 1534, 1538 (11th Cir.1989). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment action. Burdine, 450 U.S. at 254-55. If the employer successfully articulates such a reason, then the burden shifts back to the plaintiff to show that the proffered reason is really pretext for unlawful discrimination. Id. at 255-56.

  1. Prima Facie Case

  Defendant first argues that it is entitled to summary judgment based upon the theory that Plaintiff cannot make out a prima facie case of discrimination. Defendant claims that the elements of Plaintiff's prima facie case in a promotion case under the ADEA are as follows: "(1) that [Plaintiff] belongs to the protected group; (2) that she applied for and was qualified for the position for which [Defendant] was seeking applicants; (3) that she was denied the promotion; and (4) that another equally or less qualified individual outside the protected class received the promotion. See Batey v. Stone, 24 F.3d 1330, 1334 n.11 (11th Cir. 1994); Brook [v. City of Montgomery], 916 F.Supp. [1193, 1206 (M.D. Ala. 1996)]." Defendant's Brief at 13. The Court notes, however, that the Eleventh Circuit Court of Appeals has explained with respect to the fourth element referenced above that a plaintiff alleging a claim of age discrimination in employment need prove as part her prima facie only that she was qualified for the position sought, not that she was equally or better qualified than the successful applicant. See Bogle v. Orange County Bd. of County Com'rs, 162 F.3d 653, 656-57 (11th Cir. 1998); Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1433 (11th Cir.), cert. denied, — U.S. —, 119 S.Ct. 405 (1998); see also Walker v. Mortham, 158 F.3d 1177 (11th Cir. 1998), explaining that Title VII plaintiffs are not required, as part of the prima facie case under the McDonnell Douglas framework to establish that they were equally as qualified or more qualified than successful job applicants). In addition, the Court also recognizes that the Eleventh Circuit Court of Appeals has also acknowledged that an ADEA plaintiff's prima facie case does not include a showing that the successful applicant was outside the ADEA's protected class; rather, the plaintiff needs to show only that the successful applicant was "substantially younger." See Turlington, 135 F.3d at 1433

n.10, citing O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1998).[2] Thus, in order to establish her prima facie case on her ADEA failure-to-promote claim, Plaintiff would have be able to present sufficient evidence for a reasonable jury to find as follows: (1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought; and (4) that she was qualified to do the job for which he was rejected.   See Bogle, 162 F.3d 656-57; Turlington, 135 F.3d at 1432.

Defendant concedes that Plaintiff can satisfy the first three elements of the prima facie case set out above. Defendant argues, however, that Plaintiff cannot satisfy the fourth element because she cannot show, Defendant maintains, that she was qualified to hold the Secretary position. Plaintiff responds by claiming she can show she was qualified.

Defendant first seems to suggest that the Secretary position required prior supervisory experience, which Plaintiff undisputedly did not have, and, therefore, she was not qualified. The Court concludes, however, that there is sufficient evidence from which a jury could reasonably find that prior supervisory experience was not really a job requirement. In determining whether a plaintiff is "qualified" for a sought position, within the context of an ADEA or Title VII plaintiff's prima facie case, the inquiry is directed towards whether she possesses the minimum qualifications for the position, as opposed to whether the plaintiff possesses certain qualifications or attributes that might be considered merely preferable.[3]   See Carter v. Three Springs Residential Treatment, 132 F.3d 635, 643 (11th Cir. 1998) (noting that of three "position requirements" articulated by employer, "education, experience, and special knowledge," "only education was treated as a minimum requirement"); Benson v. Tocco, Inc., 113 F.3d 1203, 1209 (11th Cir. 1997) (holding that plaintiff

---

[2]Of course, this particular point is of no consequence in this case because Lawley, at age 26, was both "substantially younger" than Plaintiff and outside the 40 to 70 year-old class protected under the ADEA.

[3]A factor which is not a minimum qualification may constitute a legitimate, non-discriminatory reason for the adverse employment action, however.   See Wileman v. Frank, 979 F.2d 30, 37 (4th Cir. 1992).

satisfied burden to show he was qualified for a position, where position description listed two years experience on computer program as "ideal," but not a minimum requirement). This is in accord with the general rule that a plaintiff's burden in establishing a prima facie case is not onerous.   See Brown v. American Honda Motor Co., 939 F.2d 946, 949 (11th Cir. 1991),   citing Burdine, 450 U.S. at 253. The evidence could easily suggest that supervisory experience was merely something that Yates might have preferred in a candidate, rather than something he considered an absolute requirement.   First, Yates stated in his deposition that the Secretary position required "some supervisory capability," not previous supervisory "experience."   Yates Depo. at 19.   Second, in its position statement in response to Plaintiff's EEOC charge, Defendant did not assert that supervisory experience was required for the position.   Similarly, in a memo Yates prepared after hiring Lawley, he set forth what his alleged reasons were for favoring or disfavoring the various candidates and nowhere did he suggest that Plaintiff or any other applicant was disqualified from consideration due to lack of supervisory experience.   And finally, Yates granted interviews to and considered Plaintiff and several other employees of Defendant in steno-clerk or similar union jobs who do not appear to have had any supervisory experience.

Defendant also argues that Plaintiff was not qualified for the Secretary position because she allegedly does not possess a number of subjective characteristics that Yates allegedly considered as requirements for the Secretary position, including "good judgment, initiative, the ability to work with little guidance, trustworthiness, discretion, efficiency, flexibility of work schedule, and the ability to work under the pressure of time constraints."   Defendant's brief at 14.   In support of its allegation, Defendant points to testimony of Yates and of Ed Hauber, the Assistant to the Secretary-Administration, in which they generally impugn Plaintiff's past performance while she worked as a steno-clerk in their department.   Plaintiff counters by arguing that the characteristics offered by Defendant as requirements for the Secretary position are illegitimate because they are not listed on any job description and are based entirely upon Yates's subjective evaluations.

The Eleventh Circuit Court of Appeals has repeatedly recognized that subjective job qualification criteria should be viewed with suspicion because of their potential as ready conduits for

unlawful discrimination. See, e.g., Carter, 132 F.3d at 644, citing Miles v. M.N.C. Corp., 750 F.2d 867, 871 (11th Cir. 1985); Hill v. Seaboard Coast Line R.R. Co., 885 F.2d 804, 808-09 (11th Cir. 1989), disapproved of on other grounds, Walker v. Mortham, 158 F.2d 1177, 1187 n.23 (11th Cir. 1998). However, subjective job criteria are not per se discriminatory or illegitimate. Shealy v. City of Albany, Ga., 89 F.3d 804, 805 (11 th Cir. 1996)(citation omitted); see also Woody v. St. Clair County Com'n, 885 F.2d 1557, 1562 (11th Cir. 1989)(acknowledging that while employer's justifications for employment decision were subjective, they were not necessarily a pretext for unlawful discrimination); Smith v. Horner, 839 F.2d 1530, 1539 (11th Cir.1988)(holding that trial court could have found for employer based upon acceptance of employer's subjective reasons for not promoting plaintiff, based upon evaluations of her personality and inability to deal with higher-level officials). However, this Court concludes that it is generally more appropriate to consider the employer's subjective job expectations, such as those Defendant offers here, at the rebuttal and pretext stages of the McDonnell Douglas framework, rather than the prima facie stage. See Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933 (3rd Cir. 1997); Lindsey v. Prive Corp., 987 F.2d 324 (5th Cir. 1993); Legrand v. Trustees of University of Arkansas at Pine Bluff, 821 F.2d 478 (8th Cir. 1987), cert. denied, 485 U.S. 1034 (1988); Jayasinghe v. Bethlehem Steel Corp., 760 F.2d 132 (7th Cir.1985); Burrus v. United Telephone Co. of Kansas, Inc., 683 F.2d 339 (10th Cir.), cert. denied, 459 U.S. 1071(1982); Lynn v. Regents of the University of California, 656 F.2d 1337 (9th Cir. 1981), cert. denied, 459 U.S. 823 (1982).[4]

---

[4]In Hill v. Seaboard Coast Line R.R. Co., 885 F.2d 804, 808-09 (11th Cir. 1989), the Eleventh Circuit Court of Appeals held that a district court may without committing error consider at the prima facie stage of McDonnell Douglas both subjective and objective factors in evaluating whether a plaintiff could establish whether he was "qualified" for a sought position. In so doing, the Court of Appeals found overly-rigid a rule set out in Burrus and Lynn that at the prima facie stage a court should consider only whether the plaintiff can prove that he is qualified based upon objective factors, not subjective ones. However, while the Hill Court did not establish a per se "objective factors only" rule, nor did it establish that subjective factors must be considered at the prima facie stage. Rather, it seemed basically to adopt a more flexible approach. This court would agree that there may be some circumstances in which consideration of subjective factors would be appropriate at the prima facie stage, but the Court finds persuasive the arguments set forth from the Courts of Appeal outside the Eleventh Circuit that it is generally a better practice to leave consideration of an employer's subjective job expectations until the

The Court concludes that Plaintiff's evidence indicates that she is at least minimally qualified to perform the duties of the Secretary position. Plaintiff's affidavit indicates that she has, at one time or another, performed all or virtually all of the responsibilities of the Secretary position. Also Yates affirmatively asserts that he was familiar with Plaintiff's work performance, and he granted her an interview for the Secretary position, which may indicate that Plaintiff was at least some level qualified. See Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 440 (11th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 2511 (1997), disapproved of on other grounds, Combs v. Plantation Patterns, 106 F.3d 1519 (11th Cir. 1997). Further, Plaintiff had performed duties of a secretarial and clerical nature for the Defendant for over 21 years, and the written description of the Secretary position characterized the job duties as "secretarial" and listed specific duties commensurate with that characterization, and other written notes on internal memoranda of Defendant regarding the available Secretary position referred to it as "clerical." Buzbee's affidavit also indicates that previous incumbents of the Secretary position had been promoted from the steno-clerk ranks, of which Plaintiff was also a member. While Yates and Hauber stated that they found Plaintiff's performance as a steno-clerk lacking, the evidence, viewed in the light most favorable to Plaintiff, would allow the jury reasonably to find otherwise. Defendant does not point to any objective evidence or specific incidents that support Yates or Hauber's unfavorable subjective evaluations of Plaintiff's ability, as there is no documentary evidence indicating poor performance reviews or that Plaintiff has ever been counseled or disciplined in any fashion during the course of her employment with Defendant, and Plaintiff claims that she has never received such criticism. Indeed, upon Plaintiff's transfer to the Transportation Department in 1995, Plaintiff's former supervisor in the Mechanical Department, M.F. Bishop, indicated that he rated Plaintiff's overall performance as a steno-clerk as a "9 ½" out of a possible "10." And finally, in response to a memo Plaintiff sent to Yates after she returned to the Mechanical Department, Yates wrote to Plaintiff, "Thank you for helping out when called upon & returning to

---

rebuttal and pretext stages of the analysis.

help out in the afternoons.[5] You took with you a lot of valuable experience that we need & can still use." (Footnote added). See, e.g., Dudley v. Wal-Mart Stores, Inc., 166 F.3d 1317, 1320 (11th Cir. 1999)(evidence of prior job experience and favorable recommendations from her supervisor and another manager sufficient to indicate the plaintiff was qualified for the position sought); Bogle, 162 F.3d 653, 656 (job reviews indicating satisfactory performance indicated plaintiff showed he was qualified).

### 2. Employer's Rebuttal

Under the McDonnell Douglas framework, once the Plaintiff establishes a prima facie case of discrimination, this creates a presumption of discrimination. The employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption. Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1331 (11th Cir. 1998), citing McDonnell Douglas, 411 U.S. at 802-04. This intermediate burden, which is "exceedingly light," Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997)(citation omitted), is one of production, not persuasion. Defendant need only produce evidence that could allow a rational fact finder to conclude that the failure to promote Plaintiff to the Secretary position was not made for a discriminatory reason. Standard, 161 F.3d at 1331, citing Combs v. Plantation Patterns, 106 F.3d at 1528. However, the defendant may not satisfy its burden by presenting a hypothetical reason for the employment decision in question; instead it must present evidence sufficient to raise a genuine issue of fact as to whether it discriminated against the plaintiff by making that decision. See Combs, 106 F.3d at 1528.

The Court concludes that Defendant has met its burden of production to rebut Plaintiff's prima facie case. To justify the fact that Plaintiff was not promoted to the Secretary position, Defendant has articulated two principal reasons, which are, in some sense, opposite sides of the same coin. Defendant contends that Lawley was selected because Yates found (1) that Lawley was better qualified than Plaintiff for the Secretary position and (2) that Plaintiff's work as a steno-clerk in his office had been unsatisfactory, which indicated to him that she was not qualified for the Secretary

---

[5]Although she had returned to the Mechanical Department, Plaintiff temporarily continued to work extra hours in the Transportation Department in Yates's Office.

position. In support of its claim of the first reason, Defendant emphasizes evidence indicating that Yates hired Lawley because she, unlike Plaintiff, had a college degree and supervisory experience and because Yates thought Lawley was more "trustworthy," "discreet," "efficient," "articulate," "poised," and "professional" than Plaintiff, and that Lawley would have a flexible work schedule and be able to work under pressure.  With regard to the second reason—that Yates was dissatisfied with Plaintiff's performance while working in his department—Defendant points to evidence indicating that Yates believed Plaintiff's past job performance in his department was lacking in a number of specific ways: Yates stated that he found that Plaintiff was not "self-motivated," in that she did not "particularly perform well unless she is given a specific task."  Yates similarly indicated that he would often observe Plaintiff "sitting around, doing nothing" and that she took too many smoke breaks and spent too much time socializing outside the office.  Yates also stated that he found Plaintiff demonstrated a "poor attitude" whenever she was asked to accept additional duties and was "slow to learn new jobs."  Yates said that he felt Plaintiff did not work well under the pressure of time constraints and was "incapable of taking charge to help run the administrative duties of the division."  And finally, Yates stated that he considered Plaintiff not to be "poised or articulate," that her attire was "sloppy," and that she "did not reflect professionalism in interacting with others."

### 3. Pretext

Once it carries its burden under the second stage of the analysis by articulating legitimate, nondiscriminatory reasons for the employment action, the defendant has rebutted the plaintiff's prima facie case, the initial presumption of intentional discrimination drops from the case, and the McDonnell Douglas framework requires the plaintiff to demonstrate that the stated reasons were pretextual.  Bogle v. Orange County Bd. of County Com'rs, 162 F.3d 653, 658 (11th Cir. 1998) (citations omitted).  The plaintiff may succeed in discrediting the defendant's proffered reasons "'either directly by persuading the trier of fact that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  Combs, 106 F.3d at 1528, quoting Burdine, 450 U.S. at 256.  In this case, Plaintiff has no direct evidence that age discrimination more likely motivated the employment decision, such as

statements indicating that Yates or Hauber held an age-related animus.   Thus, Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence."   Watkins v. Sverdrup Technology, Inc., 153 F.3d 1308, 1314 (11th Cir. 1998)(citation omitted).  The same evidence that is used to establish the prima facie case may also cast sufficient doubt on the employer's proffered legitimate, nondiscriminatory basis for its decision.  See Walker v. Mortham, 158 F.3d at 1185 n.12.[6]  However, the plaintiff must present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext, and mere conclusory allegations and assertions by the plaintiff will not suffice  to survive a motion for summary judgment.   Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (citations omitted).

The Court notes that the Defendant argues that in order to survive summary judgment Plaintiff must present substantial evidence indicating not only that Defendant's articulated reasons for the employment decision were unworthy of credence but also that those reasons were "'actually a cover-up for age discrimination.'" Defendant's Brief at 18,  quoting Douglas v. Evans, 916 F.Supp. 1539, 1556 (M.D. 1996).  It is true that the Supreme Court recognized in  St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993), that  in order for a plaintiff to prevail on an ADEA claim, a factfinder must infer intentional age discrimination on the part of an employer, not just that the reasons proffered by the employer were not the real reason for an employment decision.[7]  However, it is clear that in the Eleventh Circuit, a plaintiff seeking to defeat a motion for summary judgment need not present evidence directly indicating an age-related bias on the part of the employer, as is seemingly suggested by Defendant.  See Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1561-65

---

[6]Such would seem to be true in a case such as the instant one, where the main issues of dispute at both the prima facie and pretext stages center around the job qualifications of the plaintiff.

[7]In the instant case, the jury might disbelieve all of Defendant's articulated reasons for hiring Lawley over Plaintiff, and yet still believe that Defendant acted for an unarticulated but nondiscriminatory reason, such as, perhaps, that a favor was done for Lawley's mother, who worked in the Secretary position in the Transportation Department for a number of years until she retired in 1993.

(Johnson, J. , concurring), cited with approval in Combs, 106 F.3d at 1531-32. In Howard v. BP Oil Co., 32 F.3d 520 (11th Cir. 1994), the Eleventh Circuit Court of Appeals explained:

> "[Hicks] holds that proof that a defendant's articulated reasons are false is not proof of intentional discrimination; it is merely evidence of intentional discrimination. However, evidence of intentional discrimination is all a plaintiff needs to defeat a motion for summary judgment. That evidence must be sufficient to create a factual issue with respect to the truthfulness of the defendant's proffered explanation."

32 F.3d at 525.

As mentioned previously, Defendant has in this case argued that it did not promote Plaintiff to the Secretary position (1) because Yates allegedly believed Plaintiff unqualified based upon his assessment that her work as a steno-clerk working under him in the Transportation Department and (2) because Yates allegedly believed Lawley was the better-qualified candidate. Plaintiff spends much of her brief arguing that she was more qualified than Lawley for the Secretary position and that her job performance as a steno-clerk was not deficient in the areas set forth by Defendant. However, it must be recalled that the Plaintiff's burden at the pretext stage is not to present sufficient evidence allowing a factfinder to infer merely that she was in fact more qualified than Lawley and that Plaintiff's performance while in Yates's department was adequate. Indeed, Plaintiff's hurdle at the pretext stage is substantially higher: she must present sufficient evidence for a jury reasonably to infer that Yates was not motivated by an honest belief that Lawley was more qualified or that Plaintiff's performance was unsatisfactory. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

With respect to objective factors, Defendant contends that Yates believed Lawley was more qualified than Plaintiff for two reasons: (1) Lawley had a college degree, while Plaintiff did not, and (2) Lawley had prior supervisory work experience, while Plaintiff did not. Plaintiff admits that she does not have a college degree or any supervisory work experience and that Lawley had earned a four-year degree in Hospitality Management from the University of Alabama. But Plaintiff seems to dispute whether Lawley had prior supervisory experience, alleging that her resume does not specifically state that she supervised anyone. However, Yates states that he believed Lawley had supervisory experience, and Plaintiff has failed to present sufficient evidence indicating either that Lawley did not

actually have prior supervisory experience or, more importantly, that Yates believed she did not.

But even if Lawley did have supervisory experience and a college degree and Yates understood this to be the case, Plaintiff may still succeed in showing pretext by producing sufficient evidence indicating that Lawley's supervisory experience and college degree were not factors that actually motivated Yates in making the employment decision.  See Combs, 106 F.3d at 1539-40 (holding that the plaintiff had met its burden at the pretext stage with respect to defendant's offered justification that it had promoted another employee over plaintiff based upon the other employee's superior welding experience; although other employee admittedly had superior welding experience, plaintiff produced sufficient evidence to allow the jury to find that it was not actually a motivating factor in the promotion decision).  Moreover, "the standard for plaintiff to survive summary judgment required only that plaintiff adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence [does] not directly contradict or disprove defendant's articulated reasons for its actions." O'Bryan v. KTIV Television, 64 F.3d 1188, 1192 (8th Cir. 1995), quoting Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 n.8 (8th Cir. 1994).  Thus, even where it is conceded that a plaintiff does not possess certain qualifications held by a successful applicant, where a jury might find that the plaintiff is markedly more objectively qualified overall, then the jury might infer that the defendant's proffered justification that it found the other candidate more qualified is unworthy of credence.  See, e.g., Stafford v. Muscogee County Bd. of Educ., 688 F.2d 1383, 1391 (11th Cir. 1982)(holding that a jury question existed regarding relative qualifications of plaintiff and successful applicant, where successful applicant had a seven-year teaching certificate and plaintiff had only a five-year certificate, it was undisputed that a seven-year certificate was not required for the job and plaintiff had equal or greater periods of experience in all other compared employment); Whiteside v. Gill, 580 F.2d 134, 138 n.6 (5th Cir. 1978)(holding that conflicting testimony given by witnesses at administrative hearing as to whether complainant or male competitor was more qualified for promotion to position of education specialist with the United States Air Force raised a genuine issue of material fact that precluded the entry of summary judgment); Hase v. Missouri Div. of Employment Sec., 972 F.2d 893, 897 (8th Cir. 1992), cert. denied, 508 U.S. 906

(1993)("Evidence of Plaintiff's rank, her higher examination and performance ratings, and her years of experience, when compared with [successful applicant's] supervisory experience and job recommendations, could reasonably lead a trier of fact to infer that Defendants' proffered reasons were pretextual.")[8]

In this case, it could be reasonably inferred from the evidence that Plaintiff's far superior knowledge of railroad paperwork and clerical procedures and her extensive secretarial work experience rendered her objectively and markedly more qualified for the Secretary position than Lawley, despite the latter's college degree and prior supervisory experience. Defendant asserts mightily that the Secretary position was managerial in nature and that its duties were substantively different from those of the steno-clerk position occupied by Plaintiff. However, it could be reasonably determined from the evidence that this was not the case. There is evidence suggesting that former incumbents in the Secretary position were steno-clerks before being promoted. Plaintiff, Buzbee, and Aldridge also state that they have observed former Secretaries to the Superintendent and have, at various times, performed the duties of the post, which they describe as "clerical" and similar to their own, with emphasis on railroad forms and procedures. Defendant had a written job description stating that the duties of the Secretary position were "primarily secretarial in nature" and listed duties commensurate with that characterization, and on an internal memoranda one of Defendant's employees referred to the Secretary position as a "clerical vacancy." Indeed, Plaintiff had to train

---

[8]However, the question of which person, Plaintiff or Lawley, a factfinder might consider to be more qualified is not really the focus of the pretext analysis. "When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, 'it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria.'" Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services, 165 F.3d 1321, 1330 (10th Cir. 1999), quoting Colon-Sanchez v. Marsh, 733 F.2d 78, 82 & n.1 (10th Cir. 1984). That a factfinder "'may think the employer misjudged the qualifications of the applicants does not in itself expose [the employer] to . . . liability [for unlawful discrimination] although this may be probative of whether the employer's reasons are pretexts for discrimination.'" Walker v. Mortham, 158 F.3d at 1190, quoting McDonnell Douglas, 450 U.S. at 259. Thus, the question is whether the evidence of the relative qualifications of Lawley and Plaintiff, viewed in the light most favorable to Plaintiff, reasonably suggest that Defendant's proffered reason that it did not promote Plaintiff based upon Yates's belief that her qualifications were inferior to Lawley's is unworthy of belief.

Lawley how to use a dictaphone and continually advise her of railroad procedures. Thus, it could be found that the duties of the Secretary position emphasized secretarial and clerical skills and knowledge of railroad procedures and that Plaintiff's experience in these areas rendered her much more objectively qualified than Lawley, who had no secretarial or railroad work experience. Indeed, it might be found that the objective criteria cited by Yates as rendering Lawley more qualified—her college degree and prior supervisory experience—were largely insignificant to the tasks of the Secretary position and did not actually motivate the employment decision.

It is undisputed that a college degree was not a requirement for the Secretary position; indeed, the evidence suggests that none of those in the Secretary position previously had a college degree. And, viewing the evidence in the light most favorable to Plaintiff, as is required, a jury could reasonably find that a college degree, especially Lawley's in Hospitality Managment, which Yates acknowledged had little direct application to the Secretary position, was not relevant to the job and, thus, likely did not motivate the employment decision.  See Combs, 106 F.3d at 1539-40 (holding that the plaintiff presented sufficient evidence of pretext where jury could find that characteristic offered to justify promotion of other employee over plaintiff—superior welding experience—was not relevant to the position to which the other employee was assigned—supervisor in packaging department).   See also Pitts v. Michael Miller Car Rental, 942 F.2d 1067, 1071 (6th Cir. 1991)(holding that there was sufficient evidence to believe that a college education was neither required nor relevant to the job duties performed by plaintiff, and thus, jury could believe black plaintiff's lack of a college degree was not the real reason for a disparity in pay between himself and white employees with similar duties), and compare with Barnes v. GenCorp Inc., 896 F.2d 1457, 1471 (6th Cir.), cert. denied, 498 U.S. 878 (1990) (holding that an employer was entitled to rely on superior educational credentials in retaining more qualified younger employee over older employee with more seniority, where younger employee's degree in chemistry would be relevant to job in question: librarian who worked with chemists and chemical engineers).

The Court cannot conclude, for purposes of summary judgment, that a jury could find Lawley's prior supervisory experience to be completely irrelevant to the Secretary position, given that

it is undisputed that the post did encompass at least some supervision over a number of office clerical workers, including Plaintiff once she returned to the Transportation Department in the fall of 1997. But the Court believes, nonetheless, there exists a genuine issue of material fact as to whether this proffered justification did not actually motivate the employment decision. In the first place, it appears that it could be found that the supervisory responsibilities of the Secretary position were a very minimal component of the job. The Assistant Superintendent-Administration is the current title of the position that was formerly called "Chief Clerk," whose "primary duties," according to a written job description supplied by Defendant, included "managing the office and outlying transportation administrative matters," a responsibility missing from the listed duties of the Secretary position on the same document. Plaintiff's testimony corroborated that the Assistant Superintendent-Administration was the direct supervisor of the office staff, and Yates admitted in his deposition that the Secretary position would act in a supervisory capacity primarily only in instances when the Assistant Superintendent-Administration was absent from the office. Also, the evidence indicates that Lawley possessed no secretarial work experience and was much less familiar with the office and railroad procedures than the steno-clerks she would have been charged with supervising, thus potentially rendering suspect the importance of her supervisory skills over them.

Defendant also asserts that the duties of the Secretary position were "flexible" and subject to change by Yates, suggesting that Plaintiff would not be as qualified for any new responsibilities Yates had in mind for the job. Yates might have indeed been contemplating new duties for the position. However, Defendant has produced no evidence to show precisely what those new duties were. Moreover, Plaintiff states in her affidavit that she was never told what the new duties were and that no new responsibilities were assigned to the Secretary position after Lawley was hired. Defendant almost seems to acknowledge that Lawley's duties were not significantly different from those performed by prior Secretaries, but Defendant points out that Yates left his post as Superintendent after about one month after he hired Lawley, and he could have implemented changes in the Secretary position had he remained. However, such amounts only to speculation.

Defendant's has also articulated a number of other attributes by which Yates considered

Lawley superior to Plaintiff. However, these evaluations are based upon criteria that are vague and entirely subjective, with little or no supporting objective evidence. Defendant contends that Yates considered Plaintiff to be lacking, in relation to Lawley or to the position's requirements, in "judgment," "initiative," "articulate[ness]," "self-motivat[ion]," "trustworth[iness]," "discretion," "professionalism," "efficiency," and in the ability to learn new jobs, to work under time constraints, and to "tak[e] charge to help run the administrative duties of the division." However, Yates was unable to name any particular events or incidents where Plaintiff exhibited failures supporting his opinions. Nor has Defendant submitted any other objective evidence, such as unfavorable job performance reviews or incident reports, to support Yates's opinions. Cf. Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997)("[W]here the employer produces performance reviews and other documentary evidence of misconduct and insubordination that demonstrate poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence.") For their part, Plaintiff and her co-workers Buzbee and Aldridge, deny in their affidavits that Plaintiff is inarticulate, lazy, untrustworthy, unprofessional, etc., and asserts that Plaintiff does not have a poor attitude and does not sit around "doing nothing." Moreover, Plaintiff has never been reprimanded or even counseled about any of the above shortcomings alleged by Defendant, despite the fact that she worked under Yates's supervision for about one year. As Defendant correctly points out, the subjective beliefs of Plaintiff and her co-workers regarding Plaintiff's performance and qualifications for the job are not relevant, because it is the beliefs and motivation of the employer that are at issue in a pretext analysis. See Holifield, 115 F.3d at 1565. However, as noted previously, there is evidence indicating that Yates was satisfied with Plaintiff's work in his department and that he believed she had a flexible work schedule, as he sent her a note stating how he appreciated her putting in extra hours and helping out in his department after she had transferred back to the Mechanical Department and that she had taken with her "a lot of valuable experience that we need and can still use." Indeed, when a defendant's articulated nondiscriminatory reasons for adverse employment decisions are overly vague or subjective, so as to allow little or no chance of being disproved by a plaintiff, and there is a lack of objective evidence to support the

defendant's beliefs, courts have generally found that an assessment of the defendant's credibility is required, thus precluding entry of summary judgment. See, e.g., Carter, 132 F.3d at 644-45 (holding summary judgment was improperly granted where employer claimed plaintiff was not as qualified as successful applicant because employer allegedly considered plaintiff to be lacking "special knowledge and skills," such as "initiative and judgment capabilities" and the ability to "relate to people in a manner to win confidence and establish support"); Aka v. Washington Hosp. Center, 156 F.3d 1284, 1298 (D.C. Cir. 1998)(holding summary judgment not warranted based upon defendant's assertion that plaintiff did not receive sought position because he allegedly did not show sufficient "enthusiasm" at interview); Thomas v. California State Dep't of Corrections, 972 F.2d 1343 (table), 1992 WL 197414 *3 (9th Cir. 1992)("Were we to hold that the unsupported claim that a particular candidate was a 'superior' interviewee was sufficient without more to require summary judgment for an employer, we would immunize from effective review all sorts of conscious and unconscious discrimination."); Chipollini v. Spencer Gift Inc., 814 F.2d 893, 901 (3d Cir.) (en banc), cert. dismissed, 483 U.S. 1052, (1987)(defendant's supervisors claimed plaintiff was uncooperative and difficult to get along with, but court held that, where supervisors could not give examples to support their opinions, and there was evidence of favorable performance reviews, the issue of pretext turned upon credibility and was for a jury).

The Court recognizes that there is firmer objective evidentiary support for Defendant's articulated reason that it did not hire Plaintiff for the Secretary position because Yates allegedly considered Plaintiff to spend too much time outside of the office on smoke breaks. The building in which Plaintiff works is smoke-free, and Plaintiff admitted in her deposition that she took smoke breaks "maybe once an hour, [for] five minutes," although she also qualified this answer by claiming that she took smoke breaks only "when [she] got caught up [on her work]" and when "everyone else" took them. Plaintiff's statements indicate, though, that she cannot show that Defendant's proffered reason with regard to smoke breaks is without any factual foundation. But once again, the Court concludes at this juncture that such material issue is disputed and should proceed to trial. The evidence indicates that Yates never counseled Plaintiff about taking smoke breaks. The evidence

indicates that Yates did not ever state that Plaintiff's smoke breaks caused her work to suffer; indeed, he told her that she possessed experience that his department "need[ed] and [could] still use." Also, Defendant did not mention in its position statement to the EEOC any specific concern about Plaintiff's smoke breaks or time spent out of the office. And finally, given that it could be found that Plaintiff was much more qualified to perform the duties of the Secretary position, it might also be determined that the fact that she took smoke breaks would have been insufficient to motivate the decision.

CONCLUSION

Based on the foregoing, the Court concludes that Defendant is not entitled to summary judgment. Plaintiff has produced sufficient evidence to establish her prima facie case of discrimination under the ADEA. Defendant has satisfied its burden of producing evidence of non-discriminatory reasons for the failure to promote Plaintiff. However, there is sufficient evidence to create a genuine issue of material fact as to those non-discriminatory reasons were unworthy of credence. Thus, summary judgment is inappropriate and Defendant's motion is due to be DENIED.

DONE and ORDERED this 27th day of April 1999

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE